**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| J&B SIGNS, INC., | ) | |
| | ) | **FILED: MAY 1, 2008** |
| Plaintiff, | ) | **08cv2499 j. n.** |
| | ) | **JUDGE NORGLE** |
| v. | ) | **MAG. JUDGE KEYS** |
| | ) | Case No.: |
| HOLLINGSWORTH MEDIA GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, J&B Signs, Inc., by its attorneys, Hal R. Morris and Raechelle Delarmente (Arnstein & Lehr, *of counsel*) complains of Defendant, Hollingsworth Media Group, Inc. as follows:

### COUNT I - BREACH OF CONTRACT

1.      Plaintiff, J&B Signs, Inc. ("J&B" or "Plaintiff") is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Illinois.

2.      Defendant, Hollingsworth Media Group, Inc. ("Hollingsworth" or "Defendant") is a corporation incorporated under the laws of the State of Ohio with its principal place of business in Ohio.

3.      The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

4.      Jurisdiction is based upon diversity of citizenship and the requisite jurisdictional amount in controversy.

5.    On or about January 2, 1998, J&B and Hollingsworth entered into an Asset Purchase Agreement by which J&B purchased certain assets of Hollingsworth, namely outdoor advertising structures ("J&B Assets").

6.    As part of the consideration for the Asset Purchase Agreement, J&B entered into a Management Agreement (the "Agreement"), dated March 27, 1998, with Hollingsworth. A copy of the Agreement is attached as Exhibit A.

7.    Pursuant to the Agreement, the J&B Assets, which J&B retained ownership of, and certain outdoor advertising structures which were retained by Defendant (the "Hollingsworth Assets"), and certain locations where outdoor advertising structures were intended to be constructed and operated (the "Undeveloped Assets") were to be operated, managed, leased, developed and sold on the terms and conditions of the agreement. (See Exhibit A). Collectively the J&B Assets, the Hollingsworth Assets, and the Undeveloped Assets are referred to as the "Ohio Assets."

8.    Section 1 of the Agreement, *inter alia*, required Hollingsworth to "maintain complete and accurate accounting records concerning the J&B Assets in sufficient detail" and to "provide J&B with financial statements, bank statement and reconciliations for the Ohio Assets on a monthly basis within 15 days of the end of the previous month, all in such detail as J&B may reasonably request." (See Exhibit A, Section 1, Page 2).

9.    Despite J&B's demands, to date, Hollingsworth has failed and refused to provide J&B with any financial statements and reconciliations for the Ohio Assets.

10.    Hollingsworth's failure is a breach of the Agreement.

11.     Under Section 3 of the Agreement, Hollingsworth agreed:

J&B shall receive from and to the extent of Cash Flow from operations, before any other disbursement, within 15 days after the end of each month, beginning with the month six months following the month of the effective date of this Agreement, a payment of forty two thousand two hundred two and no/100 dollars ($42, 202.00) (the "Fixed Monthly Payment") per month for sixty (60) consecutive month, plus any amounts outstanding from any Fixed Monthly Payment unpaid from prior months together with accrued interest thereon. In any month, the Cash Flow from Operations reduced by the payment described in the preceding sentence shall constitute "Cash Available for Distribution." If for any month all or a portion of the Fixed Monthly Payment is not paid to J&B, interest on the unpaid portion shall bear interest at the rate of 8% per annum compounded monthly, and the accumulated balance of any unpaid Fixed Monthly Payment amounts together with accrued interest thereon shall be paid to the extent of Cash Flow from Operations in any month. At any time, the present value of all unpaid Fixed Monthly Payment amounts together with accrued interest thereon calculated based on an interest factor of 8% per annum compounded monthly shall be referred to as the "Critical Mass Value."

(See Exhibit A, Section 3, Page 3).

12.     Despite demand by J&B, Hollingsworth refused and continues to refuse to pay J&B the Fixed Monthly Payment as required by Section 3 of the Agreement and failed and continues to fail to provide any information as to the "cash flow from operations."

13.     Hollingsworth's failure to pay the Fixed Monthly Payment and all accrued interest and its failure to provide information as to "cash flow from operations" is a breach of the Agreement.

14.     Section 4 of the Agreement details the allocation of Cash Available for Distribution. That section states:

All Cash Available for Distribution for any month shall be paid pro-rata to the extent of available funds as follows:

a.    15% of Net Revenues (less any commissions or other similar amounts determined with reference to Net Revenues paid or payable to employees of Hollingsworth and included in Direct Operating Expenses above ) for management fees payable to Hollingsworth.

3

    b. $2000 per month for accounting fees payable to Hirth, Norris & Graul or another accounting firm selected by Hollingsworth and approved by J&B.

    c. $5000 per month for unreimbursed office and administrative expenses provided by J&B to Hollingsworth payable to J&B (or such greater dollar amount reasonably submitted by J&B that properly reflects the office and administrative expenses provided by J&B to Hollingsworth in connection with Hollingsworth's responsibilities under this Agreement.

Thereafter, any remaining Cash Available for Distribution after paying the amounts specified in a., b., and c. above shall be paid 2/3 to Hollingsworth representing net income from the Hollingsworth Assets and the Undeveloped Assets and 1/3 to J&B representing net income from the J&B Assets; provided that, in the event of the death or permanent disability of Robert E. Hoelterhoff prior to the complete payment of the Critical Mass Value, one hundred percent (100%) of any remaining Cash Available for Distribution described in this sentence shall be paid to J&B (and none to Hollingsworth) until the Critical Mass Value has been completely paid. The amounts described in this paragraph for any month shall be paid within 15 days after the end of that month.

(See Exhibit A, Section 4, Pages 3-4).

15.    Despite demand by J&B, Hollingsworth refused and continues to refuse to pay J&B its allocation of the Cash Available for Distribution as required by Section 4 of the Agreement.

16.    Hollingsworth's failure to pay J&B its allocation of the Cash Available for Distribution is a breach of the Agreement.

17.    J&B has made frequent and repeated demands to Defendant to perform under the Agreement and to (a) provide the financial materials, (b) to make payment of the Fixed Monthly Payments, and (c) to provide an accounting with respect to those payments, but Defendant has failed and refused to do the same.

18.    J&B has fully performed all of its obligations under the Agreement.

19.    Thus, as a direct and proximate result of Hollingsworth's breaches of the Agreement, as described above, Plaintiff has suffered damages in the amount of the fixed monthly payments, allocation of cash available for distribution and accrued interest, which is in excess of $2.0 M.

WHEREFORE, Plaintiff, J & B prays that judgment be entered in its favor and against Defendant Hollingsworth in the amount of the fixed monthly payments, allocation of cash available for distribution and accrued interest, which is in excess of $2.0 M, costs of this action, and for such other relief as the Court shall deem just and equitable.

## COUNT II – DECLARATORY JUDGMENT

1-19.    Plaintiff repeats and realleges paragraphs 1-19, inclusive, of Count I as paragraphs 1-19, inclusive, of this Count II.

20.    An actual case and controversy exists between the parties, as required by 28 USC § 2201, and Plaintiff seeks to resolve this controversy by judgment of the Court.    Said controversy arose out of the circumstances described in this action.

21.    Section 8 of the Agreement provides:

The Ohio Assets shall be listed for sale, and subject to paragraphs 9 and 10 below, thereafter sold to the qualified buyer offering, within a commercially reasonable time period, the highest all cash binding offer to purchase the Ohio Assets with such other commercially reasonable non-price terms as the parties may agree, upon the occurrence of the first to occur:

    a.    Death, permanent disability or insolvency of Al Hollingsworth, Bill Grual, or Robert E. Hoelterhoff; or

    b.    Insolvency or bankruptcy of Hollingsworth or J&B; or

    c.    Gross negligence or willful misconduct by Hollingsworth in performing its obligations under this Agreement; or

    d.    Voluntary resignation of Hollingsworth to perform its obligations under this Agreement; or

    e.    The breach of this Agreement by either party which breach has not been cured to the reasonable satisfaction of the non-breaching party within ten (10) days of written notice to the breaching party; or

    f.    voluntary agreement by the parties; or

    g.    ten (10) years from the date of this Agreement. (emphasis added).

● ● ●

(See Exhibit A, Section 8, Page 5).

22.    The Ohio Assets should be listed for sale pursuant to Section 8 of the Agreement because the following has occurred:

    a.    Hollingsworth committed gross negligence or willful misconduct in failing to provide J&B financial statements and reconciliations for the Ohio assets as required by Section 1 of the Agreement; and

    b.    Hollingsworth committed gross negligence or willful misconduct in failing to pay J&B the Fixed Monthly Payment as required by Section 3 of the Agreement; and

    c.    Hollingsworth committed gross negligence or willful misconduct in failing to pay J&B its allocation of the cash available for distribution as required by Section 4 of the Agreement; and

    d.    Hollingsworth breached the Agreement by failing to provide financial records according to Section 1 and failing to pay J&B according to Section 3, and has failed to cure said breaches within ten days of written notice from J&B. A copy of the written demand is attached as Exhibit B; and

    e.    the Agreement was entered into on March 27, 1998 and more than ten (10) years has elapsed since the date of said agreement.

23.    J&B has demanded that Hollingsworth permit the Ohio assets, including the J&B assets, be sold.  Despite such demand, Hollingsworth has refused to allow the Ohio Assets, including the J&B assets, to be sold.

24.    Under the terms of the Agreement (Ex. A), because of the aforesaid events and the passage of time, Hollingsworth must permit the sale of the Ohio assets, including the J&B Assets.

WHEREFORE, Plaintiff, J & B requests that this Court enter an order declaring that the Ohio Assets, including the J&B Assets,  must be sold pursuant to Section 8 of the Agreement and enter such other relief that this Court shall deem just and equitable.

## COUNT III – INJUNCTION

1-24.  Plaintiff repeats and realleges paragraphs 1-24, inclusive, of Count II as paragraphs 1-24, inclusive, of this Count III.

25.    J&B has a legally protectable real property interest, under the Agreement, to sell the Ohio Assets, including the J&B Assets which it continues to own, upon the occurrence of any one of the number of events listed in Section 8 of the Agreement.  (See Exhibit A, Page 5).

26.    The parties agreed that the Ohio Assets, including the J&B Assets, would be listed for sale and sold, pursuant to Section 8 of the Agreement, because the following has occurred:

    a.    Hollingsworth committed gross negligence or willful misconduct in failing to provide J&B financial statements and reconciliations for the Ohio assets as required by Section 1 of the Agreement; and

    b.    Hollingsworth committed gross negligence or willful misconduct in failing to pay J&B the Fixed Monthly Payment as required by Section 3 of the Agreement; and

c.     Hollingsworth committed gross negligence or willful misconduct in failing to pay J&B its allocation of the cash available for distribution as required by Section 4 of the Agreement; and

d.     Hollingsworth breached the Agreement by failing to provide financial records according to Section 1 and failing to pay J&B according to Section 3, and has failed to cure said breaches within ten days of written notice from J&B (See Exhibit B); and

e.     the Agreement was entered into on March 27, 1998 and more than ten (10) years has elapsed since the date of said agreement.

27.     Defendant has and continues to interfere with Plaintiff's right to have the Ohio Assets, including the J&B Assets, listed for sale and sold.

28.     Defendant's interference imposes the real threat of immediate, irreparable harm to J&B.

29.     J&B has no adequate remedy at law and will suffer irreparable and substantial injury as a result of Defendant's behavior and refusal to allow J&B to sell the Ohio Assets.

WHEREFORE, Plaintiff, J&B requests that this Court enjoin Defendant from interfering with Plaintiff's right to sell the Ohio Assets, including the J&B Assets.

## COUNT IV – ENFORCEMENT OF SECURED INTEREST

1-29.   Plaintiff repeats and realleges paragraphs 1-29, inclusive, of Count III as paragraphs 1-29, inclusive, of this Count IV.

30.     Section 9 of the Agreement provides:

Encumbrances.   Neither the party shall grant a security interest, lien or other encumbrance on or to any of the Ohio Assets except as permitted by this paragraph ("Permitted Liens). Permitted Liens shall constitute:

    a.   a security interest granted by Hollingsworth to J&B on the Hollingsworth Assets or on the Undeveloped Assets to secure amounts payable to J&B under this Agreement.

    b.   liens granted by Hollingsworth on the Hollingsworth Assets or on the Undeveloped Assets (not the J&B Assets) to secure indebtedness incurred by Hollingsworth to acquire, develop or improve the Undeveloped Assets.

In order to secure payment of amounts due J&B under this Agreement, Hollingsworth hereby grants a security interest in the Hollingsworth Assets and in the Undeveloped Assets to J&B subject to no prior security interests, liens or encumbrances of any nature whatsoever, and Hollingsworth shall cooperate with J&B to perfect this security interest, including filing a UCC-1 financing statement reflecting J&B's interest signed by Hollingsworth in each jurisdiction reasonably requested by J&B; provided that J&B shall subordinate its security interest to any lien granted by Hollingsworth described in subparagraph (b) above. In the event, Hollingsworth fails to make any payment to J&B provided under this Agreement, J&B shall have all of the rights and remedies of a secured party under the Illinois Uniform Commercial Code.

(See Exhibit A, Section 9, Page 6).

31.     J&B's security interest in the Hollingsworth Assets and in the Undeveloped Assets has attached and is enforceable because 1) value was given to Hollingsworth, 2) Hollingsworth has rights in the Hollingsworth Assets and in the Undeveloped Assets, and 3) Hollingsworth has authenticated a security agreement that provides a description of the collateral. (See Exhibit A, Section 9, Page 6).

32.    Hollingsworth has defaulted on the payments owed to J&B by:

a.    Failing to pay J&B the Fixed Monthly Payment as required by Section 3 of the Agreement; and

b.    Failing to pay J&B its allocation of the cash available for distribution as required by Section 4 of the Agreement.

33.    Because of Hollingsworth's defaults J&B, as a secured party under the Uniform Commercial Code, may reduce its claim to judgment, foreclose or otherwise enforce the claim or security interest by any available judicial procedure. 810 ILCS 5/9-601 (2008).

34.    J&B has a secured interest in the Hollingsworth Assets and in the Undeveloped Assets and because Hollingsworth failed to pay J&B amounts due under the Agreement, J&B is entitled to relief as a secured party.

WHEREFORE, J&B requests that the Court order that Hollingsworth cooperate, if required, with J&B to perfect its security interest including filing a UCC-1 financing statement reflecting J&B's interest in each jurisdiction reasonably requested by J&B, that J&B's secured interest in the Hollingsworth Assets and in the Undeveloped Assets be foreclosed, and enter such other relief that this Court shall deem just and equitable.

Respectfully submitted,

J & B SIGNS INCORPORATED


By:___/s/ Raechelle Delarmente___
        One of its Attorneys

Hal R. Morris
Raechelle Delarmente
Arnstein & Lehr LLP, of counsel
120 S. Riverside Plaza
Ste 1200
Chicago, IL 60606
(312) 876-7100
8087705.1

# EXHIBIT A

# MANAGEMENT AGREEMENT

This Agreement is entered into as of this $27\frac{1}{2}$ day of March, 1998 by and between Hollingsworth Media Group, Inc., an Ohio corporation ("Hollingsworth") and J&B Signs, Inc., an Illinois corporation ("J&B").

# RECITALS:

A. Hollingsworth and J&B have entered into this Agreement with reference to a certain Asset Purchase Agreement dated as of January 2, 1998 (the "Asset Purchase Agreement") between the parties. Capitalized terms, unless otherwise specifically defined below, shall have their respective meanings as in the Asset Purchase Agreement.

B. Pursuant to the Asset Purchase Agreement Hollingsworth shall sell to J&B certain Assets described therein. In this Agreement, the "Assets" shall be referred to as the "J&B Assets".

C. Under Section 2.2 of the Asset Purchase Agreement Hollingsworth shall retain ownership of the Excluded Assets, some of which are more particularly described on Schedule 1 attached hereto and shall be referred to as the "Hollingsworth Assets", and the remainder of which, including those that may be developed in the future, shall be referred to as the "Undeveloped Assets".

D. Collectively, the J&B Assets, the Hollingsworth Assets and Undeveloped Assets shall be referred to as the "Ohio Assets".

E. The Parties believe that the value of the Ohio Assets may be maximized by marketing them collectively as an undivided whole, and in this connection J&B desires to have Hollingsworth manage the J&B Assets together with the Hollingsworth Assets and the Undeveloped Assets in accordance with the terms and conditions described in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Management of the J&B Assets.</u> J&B appoints Hollingsworth to manage the J&B Assets, and Hollingsworth agrees to manage the J&B Assets in accordance with the terms and conditions of this Agreement. Hollingsworth shall use its best efforts to maintain the J&B Assets and to maximize the income from the J&B Assets. In this regard, Hollingsworth shall keep the Billboards in good working order, comply with and perform under all Billboard Leases including any renewals or substitutions therefore, maintain the Advertising Contracts including any renewals or substitutions therefore, comply with the Permits and keep the Permits in force, collect all

revenues from any sources (including barter which shall be accounted for at market value), pay all direct operating expenses associated with the J&B Assets, and make any other distributions specified in this Agreement. In addition, Hollingsworth shall maintain complete and accurate accounting records concerning the J&B Assets in sufficient detail and in accordance with whatever method of accounting used by J&B in order for J&B to prepare income tax returns in full compliance with the Internal Revenue Code of 1986, as amended, and shall provide J&B with financial statements, bank statements and reconciliations for the Ohio Assets on a monthly basis within 15 days of the end of the previous month, all in such detail as J&B may reasonably request. J&B appoints Hollingsworth as its agent to deposit checks, collect funds, pay direct operating expenses and make any other distributions specified in this Agreement from one or more bank accounts designated for this purpose by the parties. In this regard, Hollingsworth agrees to assume a fiduciary duty to manage the J&B Assets on the same basis and on at least as favorable terms as Hollingsworth shall manage the Hollingsworth Assets and the Undeveloped Assets. Unless otherwise agreed to by the parties, all accounting records and financial statements prepared under this Agreement, including the definitions below, shall be based on the cash receipts and disbursements method of accounting. The cash basis method of accounting for this purpose shall not limit or prevent the parties from using the accrual basis method of accounting for purposes of preparing their respective income tax returns.

2. <u>Cash Flow from Operations</u>. Hollingsworth shall collect and account for all revenues from any source attributable to the Ohio Assets, whether realized in cash or barter (which shall be valued at market value) (the "Gross Revenues"), and shall pay all associated advertising agency commissions and "Direct Operating Expenses" (as defined below). Hollingsworth shall not incur or pay any expense or liability or otherwise make any distribution out of Gross Revenues or out of any proceeds of the Ohio Assets except as specifically provided in this Agreement. The term "Direct Operating Expenses" shall mean all expenses paid to non-affiliates of the parties incurred in the normal and ordinary course of business and necessary to operate the Ohio Assets as outdoor advertising displays, including ground rentals pursuant to the billboard leases, electricity required to illuminate the advertising displays, production expenses associated with posting or removing advertising displays, certain specific salaries and benefits of Hollingsworth employees agreed to by name and dollar amount in advance by J&B, and any incremental working capital balance, agreed to by Hollingsworth and J&B in advance, that may be necessary to operate the Ohio Assets as outdoor advertising displays in the normal and ordinary course of business. The term "Net Revenues" shall mean Gross Revenues minus associated advertising agency commissions. The term "Cash Flow from Operations" shall mean Net Revenues minus Direct Operating Expenses.

3. <u>Allocation of Cash Flow from Operations</u>. The parties acknowledge the extraordinary value that the J&B Assets have in relation to the overall value of the Ohio Assets in that by marketing the J&B Assets with the Hollingsworth Assets and with the Undeveloped Assets, the

Management Agreement between
Hollingsworth and J&B

J&B Assets will enhance the value of the latter assets significantly by enabling Hollingsworth to
offer to potential outdoor advertisers advertising exposure on the J&B Assets along with the
other Ohio Assets. In addition, Hollingsworth acknowledges the valuable assistance J&B has
provided and will provide to Hollingsworth in managing the Ohio Assets by sharing with
Hollingsworth J&B's extensive business know-how, personal advertising contracts and general
management expertise in operating an outdoor advertising display business. Accordingly, as
further inducement for J&B to retain Hollingsworth to manage the J&B Assets under this
Agreement, and to enable Hollingsworth to market the J&B Assets jointly with the other Ohio
Assets on a collective basis, and as compensation for J&B providing Hollingsworth the
management assistance described above, J&B shall receive from and to the extent of Cash Flow
from Operations, before any other disbursement, within 15 days after the end of each month,
beginning with the month six months following the month of the effective date of this Agreement,
a payment of forty two thousand two hundred two and no/100 dollars ($42,202.00) (the "Fixed
Monthly Payment") per month for sixty (60) consecutive months, plus any amounts outstanding
from any Fixed Monthly Payment unpaid from prior months together with accrued interest
thereon. In any month, the Cash Flow from Operations reduced by the payment described in the
preceding sentence shall constitute "Cash Available for Distribution". If for any month all or a
portion of the Fixed Monthly Payment is not paid to J&B, interest on the unpaid portion shall bear
interest at the rate of 8% per annum compounded monthly, and the accumulated balance of any
unpaid Fixed Monthly Payment amounts together with accrued interest thereon shall be paid to
the extent of Cash Flow from Operations in any month. At any time, the present value of all
unpaid Fixed Monthly Payment amounts together with any accrued interest thereon calculated
based on an interest factor of 8% per annum compounded monthly shall be referred to as the
"Critical Mass Value".

4. <u>Allocation of Cash Available for Distribution</u>. All Cash Available for Distribution for
any month shall be paid pro-rata to the extent of available funds as follows:

a.      15% of Net Revenues (less any commissions or other similar amounts determined
        with reference to Net Revenues paid or payable to employees of Hollingsworth
        and included in Direct Operating Expenses above) for management fees payable to
        Hollingsworth.

b.      $2,000 per month for accounting fees payable to Hirth, Norris & Graul or another
        accounting firm selected by Hollingsworth and approved by J&B.

c.      $5,000 per month for unreimbursed office and administrative expenses provided by
        J&B to Hollingsworth payable to J&B (or such greater dollar amount reasonably
        submitted by J&B that properly reflects the office and administrative expenses

Management Agreement between
Hollingsworth and J&B

provided by J&B to Hollingsworth in connection with Hollingsworth's
responsibilities under this Agreement).

Thereafter, any remaining Cash Available for Distribution after paying the amounts specified in a.,
b., and c. above shall be paid 2/3 to Hollingsworth representing net income from the
Hollingsworth Assets and the Undeveloped Assets and 1/3 to J&B representing net income from
the J&B Assets; provided that, in the event of the death or permanent disability of Robert E.
Hoelterhoff prior to the complete payment of the Critical Mass Value, one hundred percent
(100%) of any remaining Cash Available for Distribution described in this sentence shall be paid
to J&B ( and none to Hollingsworth) until the Critical Mass Value has been completely paid. The
amounts described in this paragraph for any month shall be paid within 15 days after the end of
that month.

    5.  Eminent Domain; Insurance.  J&B at its expense shall obtain and maintain all peril
insurance coverage covering the J&B Assets; and Hollingsworth at its expense shall obtain and
maintain all peril insurance covering the Hollingsworth Assets and the Undeveloped Assets, and
shall name J&B as an additional named insured. The respective insurance policies shall have such
deductibles, coverage and other terms and conditions as the parties may agree, and the parties
shall provide each other copies of the respective policies, and evidence that required insurance is
in effect. If any of the Ohio Assets suffers in whole or in part a casualty loss, to the extent
permitted by law, the asset suffering such loss shall be repaired and reconstructed with the
insurance proceeds applied toward the cost of repair or reconstruction. If any of the Ohio Assets
suffers in whole or in part a casualty loss that is prohibited by law from being repaired or
reconstructed, or if any of the Ohio Assets is condemned or suffers a taking by eminent domain or
any similar proceeding, any insurance or condemnation proceeds or similar award or payment
shall be applied first to J&B toward the unpaid portion of the Critical Mass Value, and thereafter
applied in accordance with paragraph 4 above.

    6.  Disposition of the Ohio Assets.  The parties agree that the value of the Ohio Assets
shall be maximized by marketing them on a joint and collective basis as prescribed by this
Agreement, and therefore none of the Ohio Assets may be sold, transferred, conveyed or
encumbered without the prior approval of both Hollingsworth and J&B, except in the event of a
Termination of Agreement as defined below, or as otherwise provided below.

    7.  Termination of Agreement.  This Agreement shall terminate (the "Termination of
Agreement") upon the closing of a sale of the Ohio Assets and a final distribution of the sale
proceeds together with any working capital balance maintained by Hollingsworth relating to the
Ohio Assets as described below.

-4-

Management Agreement between
Hollingsworth and J&B
_____

    8.  <u>Sale of Ohio Assets</u>.  The Ohio Assets shall be listed for sale, and, subject to paragraphs 9 and 10 below, thereafter sold to the qualified buyer offering, within a commercially reasonable time period, the highest all cash binding offer to purchase the Ohio Assets with such other commercially reasonable non-price terms as the parties may agree, upon the occurrence of the first to occur of:

      a.      Death, permanent disability or insolvency of Al Hollingsworth, Bill Graul or Robert E. Hoelterhoff; or

      b.      Insolvency or bankruptcy of Hollingsworth or J&B; or

      c.      Gross negligence or willful misconduct by Hollingsworth in performing its obligations under this Agreement; or

      d.      Voluntary resignation of Hollingsworth to perform its obligations under this Agreement; or

      e.      the breach of this Agreement by either party which breach has not been cured to the reasonable satisfaction of the non-breaching party within ten (10) days of written notice to the breaching party; or

      f.      voluntary agreement by the parties; or

      g.      ten (10) years from the date of this Agreement.

The parties shall use their best efforts and shall cooperate with each other to sell the Ohio Assets as prescribed by this provision.  In this regard, Hollingsworth, subject to the prior approval of J&B, which approval shall not be unreasonably withheld, may appoint a non-affiliate broker or agent to assist in the sale process on terms customary in the industry for similar transactions. Proceeds from the sale of the Ohio Assets shall be applied first to pay all transaction expenses, including closing costs and professional fees; next, to pay any amounts secured by Permitted Liens (as defined below) encumbering the Ohio Assets; next, to pay accrued but unpaid amounts specified in paragraphs 2, 3 and 4 in the accordance with the order of priority described therein; and next, to the extent of any remaining proceeds, 2/3 to Hollingsworth representing net proceeds of the Hollingsworth Assets and the Undeveloped Assets, and 1/3 to J&B representing net proceeds of the J&B Assets. Notwithstanding the Termination of Agreement, all of the parties' respective rights as of that time shall be preserved, and shall survive the Termination of Agreement for a period of two (2) years.

Management Agreement between
Hollingsworth and J&B

9. <u>Encumbrances</u>. Neither party shall grant a security interest, lien or other encumbrance on or to any of the Ohio Assets except as permitted by this paragraph ("Permitted Liens"). Permitted Liens shall constitute:

a.      a security interest granted by Hollingsworth to J&B on the Hollingsworth Assets or on the Undeveloped Assets to secure amounts payable to J&B under this Agreement.

b.      liens granted by Hollingsworth on the Hollingsworth Assets or on the Undeveloped Assets (not the J&B Assets) to secure indebtedness incurred by Hollingsworth to acquire, develop or improve the Undeveloped Assets.

In order to secure payment of amounts due J&B under this Agreement, Hollingsworth hereby grants a security interest in the Hollingsworth Assets and in the Undeveloped Assets to J&B subject to no prior security interests, liens or encumbrances of any nature whatsoever, and Hollingsworth shall cooperate with J&B to perfect this security interest, including filing a UCC-1 financing statement reflecting J&B's interest signed by Hollingsworth in each jurisdiction reasonably requested by J&B; <u>provided</u> that J&B shall subordinate its security interest to any lien granted by Hollingsworth described in subparagraph (b) above. In the event, Hollingsworth fails to make any payment to J&B provided under this Agreement, J&B shall have all of the rights and remedies of a secured party under the Illinois Uniform Commercial Code.

10. <u>Right of First Refusal</u>. Hollingsworth and J&B shall each have a right of first refusal to purchase the Ohio Assets for the price and on the other non-price terms offered by a third party purchaser described in paragraph 8 above. Each party shall have one week from the date a binding offer to purchase the Ohio Assets described in paragraph 8 above has been received to give written notice of its election to exercise this right of first refusal. If one party exercises this right of first refusal it shall be bound to purchase the Ohio Assets on the terms and conditions described in the third party offer. If both parties exercise their rights of first refusal, they shall have one additional week after the initial one week period to resolve the conflicting offers. If they resolve the conflict by agreement, the Ohio Assets shall be sold in accordance with their agreement; if they cannot resolve the conflict by agreement within the additional one week period, the conflict shall be resolved by the parties submitting it to binding arbitration in accordance with Section 9.4 of the Asset Purchase Agreement.

11. <u>Miscellaneous</u>. Sections 10.5, 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, and 10.12 of the Asset Purchase Agreement shall be reaffirmed and incorporated here in by reference as if written verbatim herein.

[signature page to follow]                    -6-

Management Agreement between
Hollingsworth and J&B

_____

       J&B and Hollingsworth have caused this Agreement to be signed by their duly authorized
officers as of the date first above written.


                               J&B Signs, Inc.,
                               an Illinois corporation


                               By: _____
                                  Robert E. Hoelterhoff, President




                               Hollingsworth Media Group, Inc.,
                               an Ohio corporation


                               By: _____
                                  Al Hollingsworth, President

Management Agreement

# SCHEDULE 1

# Description of Hollingsworth Assets

| | Street Location | City, State | Lessor |
|---|---|---|---|
| 1. | I-75, ¼ mile South of U.S. Highway 33, West side of roadway | Wapakoneta, Ohio | Kantner/ Schneider |
| 2. | I-75, ⅛ mile South of U.S. Highway 33, West side of roadway | Wapakoneta, Ohio | Kantner/ Schneider |
| 3. | I-75, ¾ mile North of U.S. Highway 33, West side of roadway | Wapakoneta, Ohio | Stroh |
| 4. | I-75, one mile North of U.S. Highway 33, West side of roadway | Wapakoneta, Ohio | Stroh |
| 5. | I-75, ¼ mile South of State Road 65, East side of roadway | Lima, Ohio | Kevin Gray |
| 6. | I-75, ¼ mile South of State Road 65, West side of roadway | Lima, Ohio | Aaron Wright |
| 7. | I-75, ½ mile North of State Road 309, West side of roadway | Lima, Ohio | Kevin Gray |
| 8. | I-75, one mile North of State Route 81, West side of roadway | Lima, Ohio | Offenbacher |
| 9. | I-75, ½ mile South of State Route 12, East side of roadway | Lima, Ohio | Schafer |
| 10. | I-75, ½ mile North of State Route 12, West side of roadway | Findlay, Ohio | Brannon |
| 11. | I-75, one mile North of State Route 224, West side of roadway | Findlay, Ohio | Hillcrest Golf Course |
| 12. | I-75, ⅛ mile South of Route 309, West side of roadway | Lima, Ohio | O'Connon |
| 13. | I-75, ¼ mile North of State Route 6, West side of roadway | Bowling Green, Ohio | Bowling Green University |
| 14. | I-75, ½ mile North of Route 309, West side of roadway | Lima, Ohio | Joseph |
| 15. | I-75, ⅛ mile South of Route 309, East side of roadway | Lima, Ohio | Mike Pruitt Ford |

# EXHIBIT B

# J&B SIGNS, INC.

March 19, 2008

Al Hollingsworth
Hollingsworth Media Group, Inc.
4423 S. Broadway
Grove City, OH 43123

RE: Management Agreement dated March 27, 1998 between Hollingsworth Media Group, Inc., and J&B Signs, Inc.

Dear Al:

    You are hereby officially notified that Hollingsworth Media Group, Inc. ("Hollingsworth") is in breach of the above referenced Management Agreement for the following reasons.

    Hollingsworth has failed to provide J&B Signs, Inc. ("J&B") with financial statements, bank statements and reconciliations for the Ohio Assets (as defined in the Management Agreement) on a monthly basis within 15 days of the end of the previous month, in such detail as J&B has requested, as required by Section 1 of the Management Agreement.

    Hollingsworth has failed to pay any of the Fixed Monthly Payments required to be made by Hollingsworth pursuant to Section 3 of the Management Agreement and has failed to provide any information or accounting with respect thereto.

    Many and frequent demands have been made upon Hollingsworth for performance of its obligations in the above respects; but no performance has been forthcoming nor has any satisfactory explanation been given.

    Final and formal written demand is hereby made for Hollingsworth to provide to J&B financial statements, bank statements and reconciliations for the Ohio Assets for all periods through February of 2008 and to make payment of all of the Fixed Monthly Payments that were due and owing for all periods through February of 2008, plus interest thereon as provided in Section 3 of the Management Agreement. Demand is further made for Hollingsworth to provide a complete and accurate accounting through February of 2008 with respect to Cash Flow from Operations for all periods through February of 2008 and the Fixed Monthly Payments that are due and owing for all such periods.

# J&B SIGNS, INC.

You are hereby notified, that unless Hollingsworth cures the aforesaid breaches to the reasonable satisfaction of J&B within 10 days hereafter, the Ohio Assets shall be listed for sale and shall be sold in accordance with the provisions of Section 8 of the Management Agreement.

If the aforesaid breaches are cured within the time period set forth above, please be advised that J&B may require the curing of additional breaches that it discovers upon receipt and review of the required financial statements, bank statements, reconciliations and accountings and as a result of its further investigations of the actions and omissions of Hollingsworth under the Management Agreement.

Very truly yours,

*Robert E. Hotterhoff*

J&B Signs, Inc.

By: Its___ *President*

cc:    John F. Berry
       24 E. Gay Street
       Columbus, OH 43215
       Fax — 614/464-4033